GAYLORD W. BEEBE *et al. vs.* THOMAS J. CANNEY *et al.*

Argued Jan. 10, 1893. Decided March 13, 1893.

Construction of a Contract.

By the terms of an indemnity bond signed by a surety, the measure and limit of his liability was the deficiency, if any, after a foreclosure and sale of the mortgaged premises under a second mortgage. *Held,* under the facts alleged, that such foreclosure sale was a condition precedent to a right of recovery against the surety, notwithstanding the fact of a subsequent sale under the first mortgage for a sum equal to the market value of the property. Mitchell, J., dissenting.

Appeal by plaintiffs, Gaylord W. Beebe and Charles H. Stone, from an order of the District Court of Hennepin County, *Hicks,* J., made September 21, 1892, sustaining the demurrer of the defendant Thomas J. Canney to the complaint.

On May 22, 1890, plaintiffs owned a lot in Minneapolis worth $3,200, and conveyed it that day, to Mary A. Wells for that sum. She paid down $1,900, and she and defendant William N. Reed gave plaintiffs their note for $1,300, the residue of the purchase price, and secured it by a mortgage on the lot. This note was payable six

months thereafter with interest. On the same day she made an- other mortgage upon the lot to Henry S. Sprague for $4,000 and interest, antedated April 30, 1890, and payable three years after that date, with interest semiannually. In case of nonpayment of interest, Sprague was empowered to declare the principal to be due, and to foreclose under the power of sale in his mortgage. Plaintiffs covenanted that this mortgage should be the prior lien on the lot. In consideration thereof the defendants Mary A. Wells, as principal, and · William N. Reed and Thomas J. Canney as sureties, gave plaintiffs a bond in the penal sum of $3,000 conditioned that Mary A. Wells should build a house on the lot, but containing this provision, viz.: "And it is further agreed that the limit of liability to said Beebe and Stone under this bond, in case of the failure of said Wells to erect and complete said house, shall be the deficiency, if any, after a foreclosure and sale of said premises, under said second mortgage of $1,300."

The house was not built. Sprague advanced only $1,900, (the money paid plaintiffs.) The interest was not paid, and he foreclosed under the power and sold the lot December 30, 1890, and bid it in for $2,700, its then value. No redemption was made from this sale. Reed is insolvent and Wells nonresident. This action was commenced in July, 1892, against the obligors in the bond to recover the $1,300 and interest still owing plaintiffs for the lot. A copy of the bond was attached to the complaint. Defendant Canney demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was sustained and plaintiffs appeal.

*Ripley, Brennan & Booth,* for appellants.

The court will not construe the language used so as to make this bond entirely useless, and of no advantage to any one, but will look into all the circumstances of the case and determine what the parties really intended to accomplish; will look to the end that they sought to reach, and not be blinded by the means that they may have suggested for the attainment of that end. This is not making a new contract for the parties, but determining what the real contract that

they entered into was. *Gillighan* v. *Boardman,* 29 Me. 79; *Mauran* v. *Bullus,* 16 Pet. 528.

The object that the parties had in view in inserting this clause in the bond was to require the plaintiffs to exhaust their mortgage security before resorting to the sureties, and the means suggested for this purpose was the usual one of foreclosure and sale. But it subsequently turned out that a foreclosure would result in nothing but expense. Will the court hold that the parties had any such contingency in view unless the language used is explicit to that effect? The foreclosure was a means to an end, and not an end in itself, and if it appears that as a means to that end it has become worse than useless, the court will say that the parties did not intend that it should be employed. *Briggs* v. *Norris,* 67 Mich. 325; *Heralson* v. *Mason,* 53 Mo. 211. While it is true that the plaintiffs might have foreclosed within the year for redemption, they were not bound to do so, nor within any specific time; and if the bondsmen were injured by the delay, they would only be released to the extent of the security lost and not from the entire debt. *Nelson* v. *Munch,* 28. Minn. 314. The liability of the bondsmen is very similar to that of one who guaranties the collection of a note. The holder of the note must exhaust his legal remedies against the maker by suit carried to execution, but if he is utterly insolvent the creditor may at once proceed against the guarantor. *Brackett* v. *Rich,* 23 Minn. 485.

*Welch, Botkin & Welch,* for respondent.

The default of Wells in performing the condition of the bond does. not alone give appellants any cause of action. Three conditions must exist: First, the default; second, a foreclosure of the second mortgage; and third, a deficiency upon the sale; this deficiency then becomes the fixed liability of the obligors and the amount of such deficiency, liquidated damages, which plaintiffs could undoubtedly recover. This being true, the allegation in the complaint that Wells had made default does not give a cause of action even for nominal damages. The liability of a surety cannot be extended by implication beyond the precise terms of the bond. To the extent and in the manner pointed out in his obligation he is bound, and no further.

He has a right to stand on the very terms of his contract. *Tomlinson* v. *Simpson*, 33 Minn. 443.

VANDERBURGH, J. The bond in suit was under consideration by this court in the case of *Sprague* v. *Wells*, 47 Minn. 504, (50 N. W. Rep. 535.) Sprague foreclosed his mortgage on the property described in the bond, by a sale thereof, December 30, 1890. His mortgage was the first lien. Plaintiffs held a second mortgage for $1,300, which was in fact a purchase-money mortgage; but the complaint shows that by the mutual agreement of the parties, and in consideration of the security of the bond referred to, Sprague's mortgage was antedated, and was made the first mortgage. It was dated April 30, 1890, was payable three years after date, and was given nominally for $4, 000; but, of this sum, $1,900 only was actually advanced, which, with interest, was all there was due thereon. Plaintiffs' mortgage was payable in six months after date, and became due November 22, 1890. By the terms of the bond, which was dated May 26, 1890, one Mary A. Wells, who was the principal in the bond, and the mortgagor in each mortgage, undertook to erect expensive buildings on the property in question within four months, for which purpose the loan secured by Sprague's mortgage was made, and which would, if properly expended, as intended, have made the property sufficient security for both mortgages. She, however, made default in the conditions of the bond, and no improvements were placed upon the property, or expenditure made by her upon it. The same was sold upon Sprague's mortgage for $2,700, which is alleged to have been its full value.

By the terms of the bond, the limit of the liability of the obligors to plaintiffs, including the defendant Canney as surety, is "the deficiency, if any, after a foreclosure and sale of the premises under said second mortgage, of $1,300." It does not appear, however, that any effort was ever made by the plaintiff to foreclose the same, or to assert any claim thereunder. It was not impossible to foreclose. The title was in the mortgagor, and had not been divested when this mortgage became due. The sureties had a right to insist upon a foreclosure, unless waived by them.

The land was purchased by Wells of plaintiffs in May, 1890, at the price of $3,200, alleged to be its true value then, and, as above stated, was bid in by Sprague December 30, 1890, at the price of $2,700, alleged to have been its value at that date.

It is true the defendant might take issue upon the question of value, and have had the fact judicially determined, whether it was worth more, or how much more, than that sum, or it might be ascertained, also, upon the proper investigation, whether or not the plaintiffs were not bound to have surplus moneys on the first foreclosure applied on the second mortgage, and charge defendant with the difference only.

But the answer to all this is that the parties have agreed upon another method of ascertaining the deficiency, and the defendant may insist upon it. He was entitled to bid at the foreclosure, and to the benefit of the redemption statute, and an opportunity to contest, if need be, the first foreclosure. It cannot be said that the right to foreclose was utterly valueless in this case. The contract was made in contemplation of both mortgages, and there may have been special reasons, operating upon the minds of the parties, which led them to require a foreclosure, and consequent diligence in exhausting the mortgage security, before proceeding against defendant. *Moakley* v. *Riggs*, 19 John. 69, is disapproved by this court in *Brackett* v. *Rich*, 23 Minn. 485, as respects the main proposition therein decided. Nevertheless, what the court says in respect to the laches of the holder of the note in suit is applicable here. The excuse set up for not having proceeded against the maker was that he had been discharged from his debts under the statute, but the opinion states that "this was no excuse; for seventeen months had elapsed after the note became due, before his discharge, and that was negligence which absolved the defendant from his guaranty."

We think the special circumstances of this case take it out of the rule laid down in *Brackett* v. *Rich, supra,* and that the trial court was right in sustaining the demurrer.

Order affirmed.

MITCHELL, J., (*dissenting.*) Whether plaintiffs were guilty of laches in not foreclosing their mortgage before the Sprague foreclosure,

which resulted in prejudice to the defendants, and whether a surplus was realized on the Sprague foreclosure, for which defendants are entitled to credit, are questions which are not presented by this record.

As I view the case, the only question is whether the plaintiffs were required, as a condition precedent to a right of action on the bond to foreclose their mortgage, notwithstanding that the mortgaged premises had been sold on a prior mortgage for their full value, and the time for redemption had expired.

The defendants' counsel plant themselves squarely upon the affirmative, contending that it is wholly immaterial whether the failure of plaintiffs to foreclose resulted in benefit or loss to the sureties on the bond, or whether a foreclosure would have realized something, or nothing; that plaintiffs were required, as a condition to a right of action, absolutely, and under any circumstances, to first foreclose, *because such were the terms of the bond.* And, in my judgment, this is the only possible ground upon which the decision of the court below can be sustained. But it seems to me that to give such a construction to the provisions of the bond is to stick in the bark, and to entirely overlook the good sense and manifest purpose of the instrument. The evident object of the parties in inserting in the bond the provision referred to was to require the plaintiffs to first exhaust their mortgage security before resorting to an action against the sureties on the bond. The foreclosure was merely a means to this end, and not the end itself. But if there is nothing to exhaust, and a foreclosure would result in nothing but expense, it cannot be reasonably supposed that the parties had in mind the doing of a worse than useless thing. I therefore dissent.

(Opinion published 55 N. W. Rep. 61.)